**STATE of Missouri, Respondent,**

v.

**James WILSON, Appellant.**

**No. WD 37542.**

Missouri Court of Appeals,
Western District.

Aug. 26, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 25, 1986.

As Modified Sept. 30, 1986.

Application to Transfer Denied
Nov. 18, 1986.

**30**

Kathleen Murphy Markie, Columbia, for appellant.

Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

James Wilson, defendant-appellant, appeals from a conviction of forcible rape § 566.030 RSMo Cum.Supp.1984 and first degree assault § 565.050 RSMo 1978. This is a jury-waived trial. Appellant alleges the trial court erred by: (1) failing to sustain the appellant's motion to suppress his confession because it was obtained in violation of appellant's rights guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution, (2) failing to sustain appellant's motion to suppress items seized which were inadmissible as "fruits of the poisonous tree", (3) failing to grant appellant's motion for judgment of acquittal at the close of the evidence because the state failed to establish the elements of the offense of forcible rape, (4) permitting hearsay testimony regarding the victim's statements concerning the alleged rape, and (5) by permitting a conviction and sentencing for both forcible rape and first degree assault thereby subjecting the appellant to double jeopardy in violation of the Fifth and Fourteenth Amendments of the United States Constitution. The judgment of the trial court is affirmed.

Appellant was charged by information on June 18, 1984, with first-degree assault and forcible rape. The state filed an amended information on December 19, 1984, alleging that appellant was a persistent sexual offender. The evidence presented during the trial of the events leading up to, during, and after the crimes, was provided by witnesses other than the victim, Robin Osborne as she did not testify.

On March 24, 1984, Ms. Osborne and James D. Murray, students at the Central Missouri State University, visited a Dairy Queen on Highway 13 in Warrensburg after watching a ballgame. Around 6:00 p.m., they left, and Ms. Osborne walked alone towards the campus gymnasium. Appellant, a boxer, was jogging on the campus and asked her where McGuire Street was located. When she pointed the direction, appellant reached down, grabbed her arm and waist, and dragged her into the bushes. Appellant pulled down her jeans and panties and hit her three or four times in the face with his fist. Appellant then sexually assaulted Ms. Osborne and penetrated her multiple times. He then ran away.

When the police arrived at approximately 8:30, they found Ms. Osborne lying between some double doors with no clothing on her body from the waist down. Her face was bloody, she was very disoriented, and in a great deal of physical distress. As a policeman was reporting on the radio that Ms. Osborne was assaulted, she stated, "Assault! I've been raped". The examining physician stated that she had two fractures on the left side of her jaw and swelling on her left cheek. Her neck and spine area were bruised, and there was dirt and grime in her vaginal area. Also, there was separation or tearing of the skin in her vaginal opening. It was the opinion of the examining physician that there was forcible entry through penetration. She was in a state of traumatic shock. The face and head injuries were very serious and were the result of repeated impact force, resulting in multiple blood trauma. Ms. Osborne was hospitalized for ten days and had her jaw wired for seven weeks.

On March 29, 1984, Warrensburg Police Officer Steve Woodson, acting on a lead, went to appellant's house. The officer had information that appellant had previously

been charged with fifteen separate rapes, and appellant's method of attack was similar to that used in the attack on the victim. When Woodson visited appellant, he denied knowledge of the attack.

Thereafter, Woodson contacted another police officer, Kevin Hughes to follow up his initial investigation. Woodson took the action because he observed that appellant was wearing the type of sweatpants and shoes believed to have been worn by the assailant involved in the rape. Also, appellant's right hand was swollen and he appeared nervous. Hughes went to appellant's house, and appellant voluntarily went to the police station in order to be interviewed. After appellant was given his *Miranda* rights, appellant initially denied involvement in the crime. Appellant later indicated that he had lied about his involvement in the offense. He indicated that he would tell the officers the truth after he fought in a certain boxing tournament. Appellant had planned to fight in the Golden Gloves Boxing Tournament in St. Louis in April. Hughes continued to ask appellant what happened and, finally, stated that he would not present the case to the prosecuting attorney until after the fight if he would tell the truth about what happened first. Appellant agreed and confessed to the rape and assault. After appellant confessed and made a written statement, he voluntarily agreed to provide the police with his shoes, pants, pubic hair samples and a saliva sample. He also agreed to have the police take his photograph.

On April 4, the police contacted appellant because his parole officer indicated that appellant claimed he had confessed only in order to be released. When the police confronted him with this, appellant stated that he had indeed told the truth when he confessed. Appellant participated in the boxing tournament and was then arrested on April 24. On that date, appellant again made a statement indicating that he had been truthful in his confession. When the police took appellant to the crime scene, he stated he would have to take his punishment as it came and that he should only get five or ten years.

At the close of all the evidence and arguments of counsel, the court found appellant guilty as charged. Appellant appeals his conviction and sentence.

Since the outcome of this appeal could depend on the confession of the appellant, the propriety of the confession will be considered first. Appellant asserts his confession was induced by an improper promise by Officer Hughes not to present the case to the prosecuting attorney until after appellant attended a boxing match.

In *State v. Simpson*, 606 S.W.2d 514 (Mo.App., 1980), this court reviewed the standards concerning the admission of confessions.

When a defendant in a criminal case raises the issue of admissibility of a confession procured by custodial interrogation and contends that the statement was coerced, the burden is on the state to show that the statement was voluntarily made. *State v. Higgins*, 592 S.W.2d 151, 158 (Mo. banc 1979). Whether a statement is voluntary depends on the 'totality of the circumstances and requires an examination on a case by case basis to ascertain if the defendant by physical or psychological means, has been effectively deprived of a freedom of choice. *State v. Flowers*, 592 S.W.2d 167 (Mo. banc 1979); *State v. Higgins, supra* ... The burden on the state is to prove by a preponderance of the evidence that the custodial statement was voluntary. *State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978). If the decision as to voluntariness turns on resolution of conflicting evidence or assessment of credibilty, such issues are for the trial court to judge. *State v. Frazier*, 587 S.W.2d 368 (Mo. App.1979)."

*Id.* at 516; *see also, State v. Brown*, 698 S.W.2d 9, 11 (Mo.App.1985); *State v. Cutts*, 694 S.W.2d 804, 808 (Mo.App.1985); *State v. Diercks*, 674 S.W.2d 72, 78 (Mo.App. 1984).

The totality of circumstances in the present case indicate that appellant's confession was voluntary and not the result of

an improper promise by the police. The relevant facts are as follows.

After appellant was given his *Miranda* rights, he initially denied involvement in the crime. However, appellant later indicated that he had lied about his involvement in the offense, but wanted to fight before he confessed.

There was a suppression hearing out of the presence of the jury where evidence was presented on the issue of the voluntariness of appellant's confession. There was no evidence of coercion, nor was there evidence that the interviews were conducted in uncomfortable quarters after physical deprivation or in an atmosphere of hostility or intimidation. Further there is evidence that the deal originated with appellant. *State v. Hunter*, 456 S.W.2d 314, 320 (Mo. banc 1970); *but see State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978).

When there is an alleged promise made by the state, the court must consider the definiteness of the promise, who initiated the deal, the time lapse between the promise and confession, and whether the officer making the promise believed the promise would influence the giving of the confession. *See State v. Hunter*, 456 S.W.2d 314. Finally, a confession is not admissible if given to obtain the particular agreed-upon result and that result is aborted. *State v. Chatman*, 682 S.W.2d 82, 86 (Mo.App.1984) *quoting State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976). *See also, State v. Sanders*, 714 S.W.2d 578 (Mo.App. 1986).

This case is similar to *State v. Hutson*, 537 S.W.2d 809, 810 (Mo.App.1976), in which the court found a confession to be voluntary where the appellant offered to relate the facts of a homicide and initiated an inquiry concerning plea bargaining. As a result of the appellant's inquiries, the prosecuting attorney told him that if he elected to plead guilty to a charge of murder and to testify in another case, the prosecutor would recommend that the appellant be sentenced to a term of twenty years. The court noted that neither the prosecuting attorney nor the police officer asked the appellant to make the statement, but instead, the appellant volunteered to do so. *Id.* at 810. In the present case, the police officer did not force appellant into giving a confession which he was not willing to give. Appellant initiated the negotiation of this agreement by stating that he had been untruthful about his previous denial of knowledge about the crimes. Implicit in his recanting of no knowledge of the crime was a suggestion to let him fight and then he would tell the truth. In addition, the police officer carried through with his promise by permitting appellant to engage in the tournament.

Even disregarding the circumstances surrounding appellant's confession, the promise made by Officer Hughes was collateral to the prosecution of appellant. In *State v. Pippenger*, 708 S.W.2d 256, 266 (Mo.App.1986), the court found that an appellant's confession was voluntary although the police officer promised that he would not personally notify the appellant's family and that he would inform the prosecutor and the defendant's attorney about the appellant's mental state. The court relied on *State v. Hopkirk*, 84 Mo. 278 (1884), and *State v. Williamson*, 339 Mo. 1038, 99 S.W.2d 76 (1936), to find that the promise merely went to a collateral benefit which would not invalidate the confession. According to the Supreme Court in *State v. Williamson*, in order for a confession induced by promises to be rendered inadmissible, the promises must be "promises of 'worldly advantage,' as distinguished from adjurations of a moral or spiritual nature; and they must be direct, as distinguished from collateral." The promises "must have reference to the accused's escape from punishment or to the mitigation of his punishment for the crime charged, and not offer merely an opportunity for the gratification of his personal desires or for his greater comfort, or for the granting of a benefit to some third person." *Id.* at 76. In the present case, the police officer's promise did not mitigate appellant's punishment or refer to appellant's escape from punishment. Instead, the promise went to

a collateral matter of appellant's personal gratification of attending the boxing tournament. Therefore, this was not the type of promise which would render appellant's confession involuntary.

This court's decision in *State v. Wallace*, 706 S.W.2d 597 (Mo.App.1986), a case upon which appellant relies, can be clearly distinguished. In *Wallace*, this court found that a promise by a police officer that he would ask the detective assigned to the case to file city charges against appellant if appellant confessed rendered the confession involuntary. The confession in that case was clearly directed to mitigation of the defendant's punishment as opposed to the present case, wherein the collateral promise went to when the charges would be filed.

■ The trial court properly admitted appellant's confession because the totality of the circumstances indicate appellant's confession was voluntary. Therefore this point is denied.

Appellant next claims that the trial court erred in denying his motion to suppress physical items, including shoes, items of clothing, hair samples, knee impressions, photocopies, photographs, charts, graphs and overlays made therefrom because these items constituted "fruit of the poisonous tree" and would not have been inevitably discovered through lawful means. The ruling as to point I puts this argument to rest. Appellant's confession was not involuntary, and therefore these items do not constitute "fruit of the poisonous tree." The appellant must lose on this point.

■ We now address the claim that there was insufficient evidence to support the conviction for forcible rape. Since appellant's third and fourth points deal with the state's alleged failure to make a case, they will be discussed in conjunction with the insufficient evidence claim. Appellant alleges the state failed to prove by competent evidence that: (a) the victim's sexual organ had been penetrated; (b) the penetration took place without the victim's consent by forcible compulsion; and (c) the victim was not married to the appellant.

In reviewing the sufficiency of the evidence, this court shall accept as true all of the evidence favorable to the state, including all favorable inferences drawn therefrom and shall disregard all evidence and inferences to the contrary. *State v. Bulen*, 646 S.W.2d 405, 406 (Mo.App.1983). Appellant's argument rests on the fact that the state relied primarily upon circumstantial evidence because Robin Osborne did not testify. Further, he claims Ms. Osborne's statement that she was raped constituted inadmissible hearsay and he once again argues his confession was involuntary. The state's case did not rely solely on circumstantial evidence because appellant's confession was voluntary and as such is properly admitted as direct evidence. *State v. Bannister*, 680 S.W.2d 141, 148 (Mo. banc 1984). In addition, Ms. Osborne's statement clearly constituted an excited utterance because the utterance was made under stressful circumstances and was related to the event producing the stress. *State v. Williams*, 673 S.W.2d 32, 34 (Mo. banc 1984); *State v. White*, 621 S.W.2d 287, 295 (Mo.1981). Although the hearsay exceptions and right to confrontation are two separate issues, the Missouri Supreme Court has consistently stated that testimony admitted under an exception to the hearsay rule does not deprive a party of his Sixth Amendment rights under *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *See State v. White*, *supra* at 295 (applying excited utterance exception); *State v. Newberry*, 605 S.W.2d 117, 125 (Mo.1980); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Because the statement was properly admitted as an excited utterance, there was no requirement of proving the victim's unavailability and therefore there was no violation of the Sixth Amendment right to confrontation.

There is ample evidence in the record that the state sustained its burden of proof regarding the elements of the offense of forcible rape.

■ First, the state presented evidence that the victim was not married to defend-

ant. At trial, Mary Frances Osborne, mother of the victim, testified that Ms. Osborne was single and had never been married. Appellant argues that the victim could easily have been secretly married to appellant without her mother's knowledge while living at college. This is an argument founded in absurdity and more importantly is not supported by any evidence. This matter can be proved by circumstantial evidence. *State v. Thurber*, 625 S.W.2d 931, 933 (Mo.App.1981).

There was sufficient evidence that appellant committed penetration of the victim. In his confession, appellant admitted that he had a "sex relationship" with the victim. Further, appellant also admitted that he "sexually penetrated" Ms. Osborne fifteen or twenty times. The examining physician testified that in his opinion there was forcible penetration.

Finally, the state provided sufficient evidence that the victim did not consent to having sexual intercourse with appellant. Appellant's confession indicated that he forcibly raped Ms. Osborne by pushing her into the bushes, taking off her jeans and "sexually penetrating her fifteen or twenty different times". Further, her severe injuries were evidence of her lack of consent.

When the state's case rests upon circumstantial evidence, the facts and circumstances must be consistent with each other and with the hypothesis of appellant's guilt. The inferences must be "irreconcilable and inconsistent with defendant's innocence and must ... exclude every reasonable hypothesis of innocence." *State v. White*, 665 S.W.2d 359, 362 (Mo.App.1984). The mere existence of other possible hypotheses is not enough to remove the criminal case from the jury; nor does circumstantial evidence need to demonstrate impossibility of innocence. *State v. Nash*, 621 S.W.2d 319, 323 (Mo.App.1981).

The state provided both circumstantial and direct evidence that appellant forcibly raped Robin Osborne; therefore, the trial court properly denied the motion for judgment of acquittal.

In his final point, appellant argues that his convictions of first degree assault and rape constituted double jeopardy.

In determining whether a conviction violates the Double Jeopardy Clause, Missouri follows the "separate or several" rule rather than "same transaction" rule. *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977); *see also, State v. Jackson*, 703 S.W.2d 30, 33 (Mo.App.1985); *State v. Childs*, 684 S.W.2d 508, 510–11 (Mo.App.1984). According to the "separate or several" theory, a defendant may be convicted of several offenses arising from the same set of facts. The fact that two crimes occurred at substantially the same time or that substantially the same evidence must be shown to prove both crimes does not require the state to present only one charge. *State v. Olson*, 636 S.W.2d 318, 320 (Mo.1982); *State v. Mudd*, 703 S.W.2d 63, 67 (Mo.App.1985); *State v. Childs*, 684 S.W.2d 510–11. The determining factor as to whether several charges are identical is whether each offense necessitates proof of an essential fact or element not required by the other. *Id.* at 511. Moreover, a defendant may be convicted of both rape and assault where the separate acts of force are employed to commit the respective crimes. *State v. Gibson*, 633 S.W.2d 101, 106 (Mo.App.1982); *Villanueva v. State*, 636 S.W.2d 103, 104 (Mo.App.1982).

The evidence established that appellant used separate acts of force to assault and rape Ms. Osborne. The act of force used in the first assault was the severe beating with appellant's fists. She suffered two fractures in her cheek, her left cheek was swollen, and the areas around her neck and spine were bruised. This multiple beating caused serious head injuries resulting in multiple blood trauma. Appellant admitted that he raped the victim after he beat her.

Appellant also used forcible compulsion to rape Ms. Osborne. There was a separation or tearing of the skin in her vaginal opening. Appellant's confession and the

seriousness of the victim's injuries indicate that appellant used separate acts of force to assault and rape her. In fact, appellant admitted that he sexually penetrated her fifteen or twenty times after he assaulted her.

In *Green v. State*, 659 S.W.2d 219, 222 (Mo.App.1983), this court found that a conviction for assault and robbery did not place a defendant in double jeopardy where the force constituting the assault—shooting a victim in the mouth—was not the element of force in the robbery charge—displaying a deadly weapon and striking the victim on the head with the weapon. *See also State v. Sprous*, 639 S.W.2d 576 (Mo.1982). Similarly, appellant used separate acts of force to assault and then rape the victim. Appellant's point is therefore denied.

The judgment of the trial court is affirmed.