STATE of Missouri, Respondent,

v.

Tyrone HILL, Appellant.

No. WD 54102.

Missouri Court of Appeals,
Western District.

June 16, 1998.

Rosalynn Koch, Asst. Public Defender, Columbia, for Appellant.

Philip M. Koppe, Kansas City, for Respondent.

HANNA, Presiding Judge.

On November 14, 1996, the defendant, Tyrone Hill, was convicted after a jury trial in the circuit court of Jackson County of two counts of robbery in the first degree,

§ 569.020,[1] two counts of armed criminal action, § 571.015.1, possession of a short barreled shotgun, § 571.020.1(4), and tampering in the first degree, § 569.080.1. The defendant was sentenced to consecutive terms of 30 and 25 years imprisonment on each of the robbery convictions, and to terms of 10 years imprisonment for each of the armed criminal action convictions, and six and seven years respectively for possession of a short barreled shotgun and tampering in the first degree, the sentences to run concurrently with the other convictions.

On appeal, the defendant complains that his convictions for armed criminal action and possession of a short barreled shotgun violated his double jeopardy rights, that an erroneous jury instruction was given, and there was insufficient evidence to support his conviction for possession of a short barreled shotgun.

On May 16, 1996, the Dollar General Store at 6141 Blue Ridge Boulevard in Raytown, Missouri, was robbed. The defendant approached Joyce Nead, a cashier on duty, holding a paper bag, and told her to give him the money from the register. He pointed to something underneath his coat, which she believed to be a gun. She began to panic and could not open her register.

During this exchange, a customer, Judy George, walked up to the register with a $20 dollar bill in her hand. As she neared the register, she heard Ms. Nead tell the defendant, "I'm trying to get it open." The defendant grabbed Ms. George by the right shoulder, put a gun to her neck, and told Ms. Nead to hurry up or he would "blow her neck off." He also took Ms. George's $20.

Ms. Nead was unable to open her register, so she called her manager, John Miller. As Mr. Miller was approaching the front of the store, he saw the defendant holding the gun. The defendant pointed the gun at him, and told him to open the drawer or he would kill him. Miller tried to open the register but it had run out of "detail tape" which caused the register to automatically close. During this entire time, the defendant repeatedly made statements to, "Open up the register or I'll

kill you" and, "Give me the money or I'll kill the customer." Mr. Miller went to the next register and pulled out the cash drawer. The defendant took approximately $130 dollars from the drawer and placed the money in his pocket.

Officer Gregory Smith, of the Raytown Police Department, was driving by the store when he received a radio dispatch that a robbery had just occurred at the store. Officer Smith pulled his vehicle up to the store just as a man, who matched the description of the robbery suspect and who was later identified as the defendant, was exiting the store.

When the defendant saw Smith's patrol car, he started to run. He went through a parking lot and then "cut through" a beauty shop. Smith decided not to follow him into the shop because he thought the defendant was armed. He radioed Officer Rick Strack and told him that the defendant had entered a fenced, wooded area. Strack apprehended the defendant there. The defendant was not wearing a shirt at the time of his arrest. He was searched and the police recovered a .20 gauge shotgun shell and $149 dollars. The money was bundled exactly the way that the Dollar General Store packaged its cash. Police Chief Christopher Turnbow recovered a paper sack and a crumpled white T-shirt next to a shed in the yard from which the defendant had run. Officer Kevin Sheets found a green pullover shirt which was wrapped around a sawed-off shotgun in a bush near the scene of the robbery. The barrel of the gun measured slightly over 15¾ inches.

Meanwhile, in a nearby parking lot, police also found an automobile with its right rear window broken out. This car was later determined to be stolen. Inside the car, the police found a blood-stained paper towel, a screwdriver and a cassette with rap music. Pat Sanchez, the owner of the vehicle said the car had been stolen earlier that day. She stated that the towel, screwdriver, and tape were not her's. The latent fingerprints

1. All statutory references are to the Missouri Revised Statutes, 1994, unless otherwise indicated.

taken from the trunk of the car matched the defendant's.

The defendant told inconsistent stories. At trial, he testified that he was going to Pizza Hut and took a shortcut through the parking lot which took him past the automobile. He said that is where he found the shotgun shell and that he had picked it up for good luck. In addition, he testified that he patted the trunk lid of the car to make sure it didn't have an alarm and then decided to look around in it and find "something else [to steal]." He said that as he was getting out of the vehicle, the police arrived, so he attempted to run, but stopped when the police officer drew his gun. The defendant testified that the $149 found in his pocket was his to take care of some unpaid traffic tickets.[2]

▪ The defendant argues that the crimes of armed criminal action and possession of a short barreled shotgun are the same and thus, violate the Double Jeopardy Clause. He bases his argument on the contention that "use" of a short barreled shotgun in the robbery is the same conduct as contemplated by the "use" of a weapon in the armed criminal action counts.

▪ The Fifth Amendment to the United States Constitution provides that " ... nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb." U.S. CONST. amend V. This provision, through the Fourteenth Amendment, prohibits the state from imposing multiple punishments for the same offense. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). "[Double Jeopardy] forbids the state from splitting a single crime into separate parts and then prosecuting the offense in piece-meal." *State v. Morrow*, 888 S.W.2d 387, 390 (Mo.App.1994). On the other hand, the Double Jeopardy Clause does not protect a defendant from being punished for more than one offense which arises from the same set of facts when, under

the law, he has committed separate crimes. *State v. Gordon*, 948 S.W.2d 673, 675 (Mo. App.1997); *Morrow*, 888 S.W.2d at 390.

The question is whether the charges are identical and violate double jeopardy, or whether each offense necessitates proof of an essential element not required by the other. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Gordon*, 948 S.W.2d at 675; *State v. Wilson*, 719 S.W.2d 28, 34 (Mo.App.1986). *See also State v. Pollock*, 738 S.W.2d 531, 533 (Mo. App.1987). In addition, Missouri law has codified the limitations of convictions on multiple offenses if "one offense is included in the other, as defined in section 556.046."[3] § 556.041(1). *See also Pollock*, 738 S.W.2d at 532–33 (citing *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182).

This court addressed a similar issue in *State v. Pollock*, where the defendant argued that his convictions for the unlawful use of a weapon and unlawful possession of a concealable firearm violated double jeopardy. 738 S.W.2d at 533. This court determined that the state was required to find proof of distinctive elements, and that the evidence for both of the convictions overlapped one another but that they did not violate the Double Jeopardy Clause. *Id.*

Additionally, this court held in *State v. McKee*, that the defendant's conviction for both unlawful use of a weapon and armed criminal action did not violate double jeopardy. 826 S.W.2d 26, 30 (Mo.App.1992). In that case, McKee started shooting at Christopher Harris with his shotgun and wounded Harris. He was charged with assault in the second degree, armed criminal action and unlawful use of a weapon. The court held that the armed criminal action in this case was dependant upon the assault charge, not the unlawful use of a weapon count. *Id.* at 29. Additionally, the court reasoned that the unlawful use of a weapon offense was not a lesser included offense of armed criminal ac-

---

**2.** When asked if it wasn't an "astounding coincidence" that the money was bundled in the "exact same way" the Dollar General Store bundled its money, he answered, "Very."

**3.** Section 556.046.1(1) states that "a defendant may be convicted of an offense included in an

offense charged in the indictment or information. An offense is so included when

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

tion because both crimes require proof of different elements. *Id.*

The defendant relies upon *State v. King,* 748 S.W.2d 47, 50 (Mo.App.1988). King kidnapped the victim at knife-point and forced her into a car. He was convicted of kidnapping, armed criminal action and unlawful use of a weapon. The court concluded that "the essential element of 'use' of a dangerous instrument to commit the felony of kidnapping was established solely by the proof that the defendant exhibited the dangerous instrument to the victim in a threatening manner." *Id.* The court reasoned that the exhibition of the knife was the same conduct upon which the armed criminal action was charged and reversed the conviction for the unlawful use of a weapon. *Id.*

The defendant argues that he was convicted of three crimes arising from the same conduct. It is apparent, however, that the convictions were not based on the same acts or conduct. The defendant's conviction for the possession of a short barreled shotgun was based on his *possession,* not the *use* of the shotgun. The two counts of armed criminal action were based on the *use* of the shotgun to rob Ms. George and Mr. Miller. The crime of *possession* of the weapon was completed even before the robberies began. All three crimes were based upon separate and distinct acts, even though the offenses were committed at essentially the same time and at the same location.

The Fifth Amendment prohibition against double jeopardy protects a defendant from multiple punishments for the same offense, *Hagan v. State,* 836 S.W.2d 459, 460 (Mo. banc 1992), however, it does not protect the defendant from punishment for more than one offense arising from the same set of facts if he has in law and in fact committed separate crimes. *State v. Olson,* 636 S.W.2d 318, 320 (Mo. banc 1982)(*overruled in part on other grounds*); *Wilson,* 719 S.W.2d at 28. Missouri follows the separate or several offense rule rather than the same transaction rule. *State v. Heslop,* 842 S.W.2d 72, 74 (Mo. banc 1992), *cert. denied,* 508 U.S. 921, 113 S.Ct. 2369, 124 L.Ed.2d 275 (1993); *State v. McTush,* 827 S.W.2d 184, 186 (Mo. banc

1992). Thus, even if the crimes were based upon the same conduct, multiple convictions are permissible if the defendant has in fact and in law committed separate crimes. § 556.041.

■ Furthermore, double jeopardy analysis regarding multiple punishments imposed at a single trial is, in light of *Missouri v. Hunter,* 459 U.S. 359, 367–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983), limited to determining whether cumulative punishments were intended by the legislature. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679; *McTush,* 827 S.W.2d at 186. Because the statutes themselves do not expressly authorize cumulative punishments, *State v. Villa–Perez,* 835 S.W.2d 897, 903 (Mo. banc 1992), recourse is taken to Missouri's cumulative punishment statute. § 556.041. The statute makes four exceptions to multiple punishments for the same conduct. The third subsection[4] provides that cumulative punishments are not permitted for the same conduct under two criminal statutes if "[t]he offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." § 556.041(3).

In order to prove armed criminal action, the state must show that: (1) there was a commission of a felony, and (2) a deadly weapon was used. § 571.015.1. A person commits the crime of possession of a short barreled shotgun if "he knowingly possesses ... a short barreled rifle or shotgun." § 571.020.1(4).

The required elements for both offenses are separate and distinct. Following the rationale of the *Pollock* court, we conclude that armed criminal action requires that the defendant "used" a deadly weapon in the commission of a crime and, in contrast, for a conviction of possession of a short barreled shotgun, it is only necessary that the defendant "possessed" the weapon. Section 556.041(3) does not preclude convictions for the unlawful *use* of a weapon and unlawful *possession* of a concealed firearm based upon the same conduct. These are two distinct crimes that emanated from a single event.

4. The parties acknowledge that the other three subsections are inapplicable.

Thus, the defendants double jeopardy rights were not violated. Point denied.

■ In the defendant's second point, he argues that the trial court committed plain error in giving to the jury the verdict director instruction on possession of a short barreled shotgun which omitted the word "knowingly," a necessary element of the offense. Defendant's counsel failed to object to the instruction prior to its submission or in the post-trial motion. Rule 28.03 outlines the procedure for preserving objections to instructions:

> Counsel shall make specific objections to instructions or verdict forms considered erroneous. **No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.** Counsel need not repeat objections already made on the record prior to delivery of the instructions and verdict forms. The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

*State v. Martindale*, 945 S.W.2d 669, 673 (Mo.App.1997)(quoting Rule 28.03.)(emphasis in the original).

■ A defendant cannot stand idly by, permitting the giving of an erroneous instruction, and then benefit from his inaction. *Id.* The failure to object to an instruction constitutes a waiver of error. *Id.* "Instructional error rarely rises to the level of plain error." *State v. Williamson*, 877 S.W.2d 258, 260 (Mo.App.1994). To show that the trial court "plainly erred" in submitting an instruction, the defendant "must go beyond a demonstration of mere prejudice," *State v. Davidson*, 941 S.W.2d 732, 736 (Mo.App. 1997), and must establish that the trial judge so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice. *State v. Doolittle*, 896 S.W.2d 27, 29 (Mo. banc 1995). An appellate court is "warranted in adopting a more practical view of the result" of the instructional error. *State v. Howard*, 896 S.W.2d 471, 494 (Mo.App.1995).

Here, the defense was not that the defendant unknowingly possessed the shotgun, but rather a case of mistaken identity, thus, there is no practical effect because "knowingly" was omitted from the instruction. Moreover, no manifest injustice can result from failing to submit to the jury an element of the crime that is not in dispute. *State v. Dees*, 916 S.W.2d 287, 298 (Mo.App.1995). It was undisputed that the defendant knowingly used a sawed-off shotgun during the robbery. Point denied.

■ In the defendant's final point, he argues that the evidence failed to establish that he knew the length of the barrel, at the time he possessed it, was less than 18 inches. As noted, the defendant was convicted under § 571.020.1(4) of knowingly possessing a "short barreled ... shotgun." A "short barrel" is defined by § 571.010(14) to mean, among other things, "a barrel length of less than ... eighteen inches for a shotgun, ... measured from the ... standing breach." The evidence showed that the barrel was 15¾ inches long.

In reviewing whether the evidence is sufficient to convict a defendant of a particular crime, the court considers all of the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregards all evidence and inferences to the contrary. *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). An appellate court neither weighs the evidence, nor determines the reliability or credibility of witnesses, *State v. Idlebird*, 896 S.W.2d 656, 660–61 (Mo.App.1995), but rather limits its determination to whether there is substantial evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995).

The state met its burden of proof through circumstantial evidence, which primarily consisted of the appearance of the shotgun itself. The barrel had been sawed down to 15¾ inches, substantially below the 18–inch minimum.

In *United States v. Johnson*, the defendant committed an armed robbery with a sawed-

off shotgun, the barrel having been shortened to 16 inches. 978 F.Supp. 1305, 1309 (D.Neb.1997). In rejecting the defendant's complaint that the government had failed to prove that "he *knew* the shotgun had a short barrel" (court's emphasis), the court held that "[a]ssuming the government ha[d] the burden to prove such knowledge, even a cursory examination of the weapon ... prove[d] that Johnson must have known that the barrel was shortened to an illegal length when he carried it into the bank" and used it in the commission of a crime. *Id.* at 1310. As noted in *United States v. Moore,* "[t]he readily apparent barrel length and general appearance" of a sawed-off shotgun will usually be sufficient to establish that the defendant knew that its barrel length rendered the weapon illegal. 97 F.3d 561, 564 (D.C.Cir. 1996). *See also United States v. Edwards,* 90 F.3d 199, 205 (7th Cir.1996), *appeal after remand,* 124 F.3d 205 (7th Cir. 1997), *Cert. denied,* —— U.S. ——, 118 S.Ct. 734, 139 L.Ed. 2d 671 (1998) (fact that the shotgun's length is "obvious and apparent" can provide "a means of proving knowledge"). "To hold otherwise would only serve to undermine the very purpose of the provision in regulating possession of weapons in the interest of public safety." *State v. Winders,* 366 N.W.2d 193, 196 (Iowa Ct.App.1985). A shotgun, sawed off slightly less than three inches, and which was concealed under the defendant's jacket, is sufficient evidence to prove that he had knowingly possessed a short barreled shotgun. Point denied.

Judgment of the convictions affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.