**STATE of Missouri, Respondent,**

v.

**Daniel R. VAUGHN, Appellant.**

**No. WD 56737.**

Missouri Court of Appeals, Western District.

Feb. 8, 2000.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, C.J., LAURA DENVIR STITH and RIEDERER, JJ.[1]

BRECKENRIDGE, Chief Judge.

A jury convicted Daniel Vaughn of assault in the first degree, § 565.050, RSMo 1994,[2] armed criminal action, § 571.015.1, felonious restraint, § 565.120, burglary in the first degree, § 569.160, attempted sodomy, §§ 564.011 and 566.060, and attempted robbery in the first degree, §§ 564.011 and 569.020. The trial court sentenced him as a persistent offender pursuant to § 558.016.3 to 30 years imprisonment on the count of assault in the first degree, to be served consecutively with 45 years imprisonment on the armed criminal action count. The court also sentenced him to serve concurrent sentences of 20 years imprisonment on the felonious restraint count, 30 years imprisonment on the count of burglary in the first degree, 45 years imprisonment on the forcible sodomy count, and 30 years imprisonment for the robbery in the first degree count. Mr. Vaughn raises two claims of error on appeal. First, Mr. Vaughn alleges that the trial court erred in overruling his motion for a mistrial after the State failed to timely disclose a statement he had made to his mother. Second, Mr. Vaughn alleges that the trial court plainly erred in submitting the instruction on attempted forcible sodomy because he claims the definition of attempt misstated the law. This court finds that Mr. Vaughn was not entitled to a mistrial because the record indicates that the State was not aware of Mr. Vaughn's statement to his mother prior to his mother's testimony and Mr. Vaughn failed to demonstrate any prejudice as a result of his not knowing about the existence of the statement prior to trial. This court also finds that the instruction on attempted forcible sodomy correctly defined attempt; thus, the court did not plainly err in giving the instruction. Accordingly, the judgment of the trial court is affirmed.

**Factual and Procedural Background**

On the evening of October 31, 1997, T.N., a 25–year old college student, was cross-stitching and watching television in her apartment in Warrensburg, Missouri. Because it was Halloween, T.N. had her front door slightly open to listen for children trick-or-treating. At approximately 8:00 p.m., Mr. Vaughn walked into T.N.'s apartment, holding a gun. Mr. Vaughn pointed the gun at T.N. and demanded money. T.N. told Mr. Vaughn she did not have any money. Mr. Vaughn ordered T.N. to remove her clothes, and he fondled her breasts. When T.N. struggled to free herself and grab the gun, Mr. Vaughn hit

---

1. Judge Riederer resigned from the court prior to the issuance of the opinion.

2. All statutory references are to the Revised Statutes of Missouri 1994.

her repeatedly in the head with his hand and with the butt of the gun, cutting the back of her head. While T.N. was semi-conscious, Mr. Vaughn removed the rest of her clothes and taped her hands behind her back. Mr. Vaughn then attempted several times to insert his penis into her anus, but he was unable to do so because he could not obtain an erection. Throughout the ordeal, T.N. pleaded with Mr. Vaughn to leave her alone. After Mr. Vaughn attempted to sodomize T.N., he told her to "shut up" and announced he was leaving. Mr. Vaughn took the tape off of T.N.'s hands and took T.N.'s cordless phone, which was ringing at the time. Mr. Vaughn then exited T.N.'s apartment. When T.N. was getting dressed, she found that Mr. Vaughn had left his gun in her apartment.

T.N. finished putting on her clothes, grabbed Mr. Vaughn's gun and ran to a neighbor's apartment. T.N. had blood streaming down her face. T.N.'s neighbor called the police. When the police arrived, T.N. gave them a description of her attacker. T.N. described her attacker as a white male with reddish-orange wavy hair, medium build, skinny, clean-shaven, dressed in black pants, a black shirt and a hip-length black leather coat with a belt, and wearing wire-framed glasses. The paramedics took T.N. to the emergency room, where she was treated for injuries Mr. Vaughn had inflicted on her. T.N.'s injuries included bruising on her wrists, two black eyes, a broken nose, and a cut on the back of her head which required three stitches to close.

Around 10:00 or 11:00 p.m. on the night of the attack, Mr. Vaughn went to his mother's house, where he resided. Mr. Vaughn's mother saw her son when he arrived home that night, but did not see him again until approximately four months later. Mr. Vaughn went to work the day after the attack, but then did not return to work again. Mr. Vaughn did not tell his boss he was not returning to work.

Four days after the attack, T.N. picked Mr. Vaughn's picture out of a police photo line-up and identified him as the man who had attacked her. When she saw his picture, T.N. said that she felt sick to her stomach, like an alarm had gone off in her body telling her that he was the person who had attacked her. The police also traced the gun used in the attack, a BB gun made to look like a .45–caliber pistol, to Mr. Vaughn's step-brother.

Several weeks after his disappearance, Mr. Vaughn called his mother collect from the country of Mexico. In mid-December of 1997, Mr. Vaughn called his mother collect from California. Mr. Vaughn called his mother again in early 1998, but would not tell her where he was. On February 22, 1998, the police arrested Mr. Vaughn in Las Vegas, Nevada. The State charged Mr. Vaughn by information, as a prior and persistent offender with one count of the class B felony of assault in the first degree, one count of felony armed criminal action, one count of the class B felony of kidnapping, one count of the class B felony of burglary in the first degree, one count of felony attempted forcible sodomy, and one count of the class B felony of attempted robbery in the first degree.

At trial, the State presented evidence establishing that T.N.'s description of her assailant matched Mr. Vaughn. T.N. also identified Mr. Vaughn at trial as the man who assaulted her. The State also presented evidence that Mr. Vaughn's step-brother, Jacob Miller, owned the gun used in the attack and had seen Mr. Vaughn handling the gun two weeks before the attack. Mr. Miller was unable to locate the gun when the police came to his house to ask him about it five days after the attack. Additionally, the State presented evidence that on the day before the attack, Mr. Vaughn told his boss he had been having "weird thoughts." In his defense, Mr. Vaughn alleged that T.N. had mistakenly identified him, that he was at a gym on the night of attack, and that his step-brother was not positive that the gun used

in the attack belonged to him. The jury found Mr. Vaughn guilty on all counts except the kidnapping count. Instead of finding Mr. Vaughn guilty of kidnapping, the jury found him guilty of felonious restraint. Mr. Vaughn filed this appeal.

## The State's Failure to Disclose Mr. Vaughn's Statement did not Warrant Mistrial

In his first point, Mr. Vaughn claims that the trial court erred in denying his motion for a mistrial after his mother, Linda Miller, testified to a statement that he had made which had not been disclosed to Mr. Vaughn prior to trial in accordance with Rule 25.03(A)(2). During direct examination, the State asked Ms. Miller about the three long-distance phone calls she received from her son after the attack. Ms. Miller testified that during the first call, Mr. Vaughn indicated he was calling from Mexico, and that during the second call, Mr. Vaughn said that he was calling from California. Regarding the third call, the State asked Ms. Miller if Mr. Vaughn told her from where he was making the call. Ms. Miller said that he did not tell her his location. The State then asked the question, "Would he tell you where he was making the call from?" In response, Ms. Miller testified, "He stated he did not want to tell me where he was, simply because he knew that he was being looked for and he did not want them to get me in trouble if I knew where he was." Mr. Vaughn objected to this testimony on the basis that the State had failed to disclose to defense counsel prior to trial his statement as to the reason why he would not tell his mother where he was during the third phone call. At a bench conference, the State showed the court a document which listed the statements disclosed to Mr. Vaughn prior to trial. The court sustained Mr. Vaughn's objection and, at defense counsel's request, instructed the jury to disregard Ms. Miller's comments "concerning the reason why the defendant did not tell her where he was."

At the close of the State's case, the court held a hearing in chambers during which Mr. Vaughn's counsel moved for a mistrial based upon Ms. Miller's testimony as to the reason Mr. Vaughn would not tell her where he was when he made the third phone call. The court inquired of Mr. Vaughn's counsel how she would have altered her defense strategy had she known of Ms. Miller's testimony prior to trial. Defense counsel did not inform the court how she would have changed Mr. Vaughn's defense. Instead, defense counsel responded only that the comment was "prejudicial" because it demonstrated Mr. Vaughn's consciousness of guilt. The court denied Mr. Vaughn's motion for a mistrial after finding that Mr. Vaughn had not suffered any prejudice by the nondisclosure of the statement. The court also found that the State's nondisclosure was unintentional, stating:

> And if I thought for one minute that the prosecution had tried to hide the ball from you to gain some advantage by not telling you that this – that the defendant's mother was going to say this, I would grant a mistrial right now because of what I would have to believe was prosecutor misconduct. That's absolutely not what happened.
>
> If he knew what she was going to say, if he would have told you she was going to say that, you wouldn't be in any different position than you're in, because if it's a question of her credibility, you can cross examine her.

On appeal, Mr. Vaughn claims that the trial court should have granted a mistrial because he detrimentally relied on the State's discovery in preparing his alibi defense, and the undisclosed statement was "last-minute incriminatory evidence" of his consciousness of guilt to which he was denied the opportunity to prepare an adequate defense.

Appellate review of the denial of a motion for a mistrial is limited to a determination of whether the trial court abused its discretion. *State v. Eighinger,*

931 S.W.2d 835, 841 (Mo.App.1996). Mr. Vaughn alleges that he was entitled to a mistrial because the State violated a criminal discovery rule by not disclosing his statement prior to trial. Compliance with the criminal discovery rules is mandatory, and is not "mere etiquette." *State v. Scott*, 943 S.W.2d 730, 735 (Mo.App.1997). Rule 25.03(A)(2), the rule Mr. Vaughn claims the State violated, states that upon written request, the State is required to provide to defense counsel "the substance of any oral statements made by the defendant ..., a list of all witnesses to the making, and a list of all witnesses to the acknowledgment, of such statements, and the last known addresses of such witnesses." This rule requires the State to disclose this information only if it is within the State's possession or control. Rule 25.03(A); *State v. Johnston*, 957 S.W.2d 734, 748 (Mo. banc 1997), *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998).

The record in this case indicates that the State had disclosed to defense counsel, prior to trial, other statements Mr. Vaughn had made to Ms. Miller, but not the statement regarding his reason for not telling her where he was when he made the third phone call. The record in this case also indicates, however, the State was not aware of the existence of this particular statement prior to Ms. Miller testifying about it at trial. The State did not solicit Ms. Miller's testimony regarding Mr. Vaughn's reason for not telling her his location. The question to which Ms. Miller offered the statement was *whether* Mr. Vaughn would tell her where he was when he called, not *why* he would not tell her where he was. Moreover, in ruling on the motion for mistrial, the trial court specifically and emphatically stated that it did not believe the State had knowledge of the statement prior to Ms. Miller's trial testimony.

■ Because the trial court found that the State had no knowledge of the statement prior to Ms. Miller's testimony, Mr.

Vaughn's statement to Ms. Miller regarding his reason for not telling her his location during the third phone call was "undiscovered" but not "undisclosed." *See State v. Bucklew*, 973 S.W.2d 83, 92 (Mo. banc 1998), *cert. denied*, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999) (holding that, in not disclosing a witness's testimony that the defendant made a threat against another's life, the State did not violate Rule 25.03 because the rule does not require the State "to disclose what it does not have"); and *Johnston*, 957 S.W.2d at 748-49 (finding that a witness's testimony regarding threats the defendant made against his life "was not undisclosed; it was undiscovered" where the trial court had determined that the witness's testimony was a " 'spontaneous voluntary answer to a previously unsolicited question made to him for ... information that apparently was not discovered before from either side....' "). Where, as in this case, the trial testimony of a witness "includes information in addition to that contained in previous statements which had been provided to the defense, this is a proper subject for impeachment but does not constitute prosecutorial violation of [Rule 25.03]." *State v. Thompson*, 985 S.W.2d 779, 786 (Mo. banc 1999). Accordingly, this court finds that no violation of Rule 25.03(A)(2) occurred.

■ Not only does Mr. Vaughn fail to establish that a violation of Rule 25.03(A)(2) occurred, he also fails to demonstrate how he was prejudiced by not knowing about this portion of Ms. Miller's testimony prior to trial. Mr. Vaughn claims that Ms. Miller's testimony that he knew he was being looked for and did not want to get his mother into trouble by telling her his location was the only evidence which demonstrated his consciousness of guilt. He also claims that had he known about Ms. Miller's testimony, he could have prepared a defense to this evidence in addition to his asserted defenses of mistaken identity and alibi.

Contrary to Mr. Vaughn's claim, however, there was ample other evidence presented at trial which demonstrated his consciousness of guilt. Ms. Miller testified that following the night of the attack, she did not see her son again until four months later. During those four months, he called her from Mexico, California, and an undisclosed location. When the police apprehended Mr. Vaughn four months after the attack, he was in Las Vegas, Nevada. Additionally, Mr. Vaughn's boss testified that Mr. Vaughn left his job the day after the attack without telling anyone he was quitting. Evidence that a defendant fled the jurisdiction after the crime indicates the defendant's consciousness of guilt. *State v. Enke*, 891 S.W.2d 134, 140 n. 4 (Mo.App. 1994). *See also State v. Rodney*, 760 S.W.2d 500, 504 (Mo.App.1988). This evidence alone, without the statement of Ms. Miller regarding why Mr. Vaughn would not tell her his location during the third phone call, created the reasonable inference that Mr. Vaughn fled Warrensburg without telling his mother and his boss because he was conscious of his guilt in the attack on T.N. Mr. Vaughn knew of this evidence prior to trial, and it apparently did not affect his trial strategy of asserting defenses of mistaken identity and alibi.

Further, Mr. Vaughn does not articulate what he would have done differently had he known, prior to trial, of Ms. Miller's testimony regarding Mr. Vaughn's statement as to why he would not tell her his location. "Claims of surprise requiring a mistrial must be supported by some reasoned basis for the existence of actual prejudice." *Johnston*, 957 S.W.2d at 749. Mr. Vaughn has failed to provide a reasonable basis for the existence of actual prejudice. Moreover, any prejudice that might have occurred was cured by the trial court's instruction to the jury to disregard Ms. Miller's testimony as to the reason Mr. Vaughn gave for not telling her where he was during the third phone call. *State v. Bolanos*, 743 S.W.2d 442, 449 (Mo.App.

1987). The trial court did not abuse its discretion in denying Mr. Vaughn's motion for a mistrial. Point I is denied.

## The Instruction on Forcible Sodomy Correctly Defined Attempt

In his second point, Mr. Vaughn claims that the trial court plainly erred in giving the instruction on attempted forcible sodomy. The trial court submitted the following instruction on attempted forcible sodomy:

As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 31, 1997, in the County of Johnson, State of Missouri, the defendant attempted to insert his penis into the anus of [T.N.], and

Second, that such conduct was a substantial step towards the commission of the offense of forcible sodomy, and

Third, that defendant engaged in such conduct with the purpose of committing such forcible sodomy, then you will find the defendant guilty under Count V of attempted forcible sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of forcible sodomy if he has deviate sexual intercourse with another person by the use of forcible compulsion.

If you do find the defendant guilty under Count V of attempted forcible sodomy, you will return a verdict finding him guilty of attempted forcible sodomy.

This instruction was patterned after MAI–CR3d 320.09, the instruction on forcible sodomy, as modified in part by MAI–CR3d 304.06, the instruction on attempts.[3]

3. The instruction was also modified by MAI–

CR3d 304.08, the instruction used when the

The Notes on Use following MAI–CR 3d 320.09 provide that "[t]o submit the offense of attempted forcible sodomy, this instruction must be modified in accordance with MAI–CR3d 304.06, Attempts." MAI–CR3d 304.06 supplies the language that the jury will find the defendant guilty of attempting to commit the crime charged if it finds that the defendant's conduct constituted a "substantial step toward the commission" of the crime. This definition of attempt is identical to the definition of attempt found in § 564.011.1, the general attempt statute.

■ In instructing the jury on attempted forcible sodomy, the trial court in this case followed MAI–CR3d and its accompanying Notes on Use. Nevertheless, if the patterned instruction in MAI–CR3d "conflicts with the substantive law, any court should decline to follow MAI–CR3d or its Notes on Use." *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997). Mr. Vaughn contends that the instruction conflicts with substantive law because the common law definition of attempt applies to attempted forcible sodomy, and not the definition of attempt found in § 564.011.1. According to Mr. Vaughn, the common law definition of attempt requires the jury to find that he had the "present ability to consummate the offense" of forcible sodomy.

■ Mr. Vaughn did not object to the giving of the instruction on attempted forcible sodomy at trial. "The failure to object to an instruction constitutes a waiver of that error." *State v. Hill,* 970 S.W.2d 868, 872 (Mo.App.1998). Indeed, Rule 28.03 provides, *inter alia,* that "[n]o party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Because he failed to preserve his allegation of error,

jury is not to assess punishment. Mr. Vaughn does not allege error in this portion of the

Mr. Vaughn is entitled to relief only if he can establish that the submission of the instruction constituted plain error. *Hill,* 970 S.W.2d at 872. To show plain error, Mr. Vaughn "must establish that the trial judge so misdirected or failed to instruct the jury as to cause manifest injustice or a miscarriage of justice." *Id.* A manifest injustice occurs as a result of instructional error where "it is apparent that the instructional error affected the jury's verdict." *State v. McCoy,* 971 S.W.2d 861, 864 (Mo.App.1998). Mr. Vaughn has the burden of demonstrating that he suffered a manifest injustice. *Id.*

Mr. Vaughn bases his claim that the common law definition of attempt applies to attempted forcible sodomy on his belief that § 566.060, the statute which defines the completed crime of forcible sodomy, also provides that the punishment for both the completed crime of forcible sodomy and the attempted crime is the same. Mr. Vaughn argues that by providing the penalty for the commission of attempted forcible sodomy, § 566.060 criminalizes the offense of "attempted forcible sodomy" without further defining it or referring to § 564.011 and, therefore, according to the Southern District case of *State v. Reyes,* 862 S.W.2d 377 (Mo.App.1993), the common law definition of attempt applies rather than the definition contained in § 564.011.1.

In *State v. Withrow,* 8 S.W.3d 75, 81 (Mo. banc 1999), a case decided after this case was submitted to this court, the Missouri Supreme Court specifically rejected the proposition that there are two different definitions of attempt, the common law definition and the definition provided in § 564.011.1. The Court overruled *Reyes* and its progeny, holding that "[a]n attempt to commit an offense, regardless of whether the attempt is under sec. 564.011 or under separate provisions proscribing at-

instruction.

tempting a specified crime, means a substantial step toward the commission of an offense." *Id.* at 82. Thus, pursuant to *Withrow,* this court finds that the trial court committed no error, plain or otherwise, in instructing the jury that it could find Mr. Vaughn guilty of attempted forcible sodomy if it found that Mr. Vaughn's conduct constituted a substantial step towards the commission of the offense of forcible sodomy. Point II is denied.

The judgment of the trial court is affirmed.

LAURA DENVIR STITH, J., concurs.