STATE of Missouri, Plaintiff–
Respondent,

v.

Billy Joe McCRACKEN, Defendant–
Appellant.

Billy Joe McCRACKEN,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19891, 20921.

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1997.

Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. Nixon, Attorney General, Jefferson City, for Respondent.

Before BARNEY, P.J., and PREWITT and GARRISON, JJ.

PER CURIAM.

Following a jury trial, Billy Joe McCracken (Defendant) was convicted of burglary in the second degree, in violation of § 569.170,[1] and sentenced to five years' imprisonment. Defendant's appeal from that conviction is Case No. 19891.

Defendant later filed a motion under Rule 29.15, seeking post-conviction relief. His appeal in Case No. 20921 is from the denial of that motion following an evidentiary hearing. Pursuant to Rule 29.15(*l*), the appeals have been consolidated, but we will address them separately in this opinion.

As the sufficiency of the evidence to support the verdict is not challenged, we present

---

1. All statutory references are to RSMo 1994, and all references to rules are to Missouri Rules of Criminal Procedure (1994), unless otherwise indicated.

only the evidence necessary for consideration of Defendant's contentions on appeal.

Defendant and Darci McCracken were married on May 21, 1989; they had a son, Dallas, born on October 10, 1991; they separated on July 1, 1992; and Darci filed a petition for dissolution of marriage on August 3, 1992. On February 27, 1993, Darci left her apartment in Springfield shortly after 8:00 p.m. and, after taking Dallas to a babysitter, met her date for the evening. During the course of the night, Darci's pager activated two times. Upon checking her voice mail messages, she discovered that both messages were left by Defendant. One of the messages referred to a Valentine card she had left in her briefcase in her apartment. The other message included the following: "You ignorant, f____bitch. I can get your f____job any G__d time I f____want to, and don't you forget it."

When Darci returned to her apartment early the next morning, she discovered that ketchup and barbecue sauce had been thrown on the walls, windows, and carpet. In addition, items on a glass top table had been dumped on the floor, her computer table was overturned and the computer had been thrown against the wall, the drawers of her dresser were emptied on the floor, and Dallas's crib was overturned. Darci called the police and reported the following items missing: work papers, personal financial files, pictures of Dallas, some of her clothes, her glasses, a camera, a tape recorder, a personal diary, an extra set of keys to her apartment and car, and her briefcase, which contained work papers and personal items, including the Valentine card which had been the subject of some of Defendant's remarks in one of the phone messages earlier that evening.

On March 3, 1993, Defendant's home was searched by law enforcement officers, but none of the items missing from Darci's apartment were found. In May 1993, however, Defendant's first wife discovered some of Darci's missing property in a storage shed in the backyard of her home and notified the police. Included in the recovered items were the Valentine card and the tape recorder.

Darci moved to West Plains in May, 1993, but her home there was burglarized in November, 1993. On April 11, 1994, she received an envelope at her work addressed to Dallas, in Defendant's handwriting. Among other things, the envelope contained photocopies of several pages of a diary that had been stolen during the break-in at her home in West Plains, as well as a photocopy of a letter written to Darci by another man, which had been in the briefcase that was stolen from her apartment on February 27, 1993. In May, 1994, Defendant, while being interviewed by a deputy sheriff, gave the officer one of the photographs which Darci said had been stolen from her apartment.

At trial, Darci testified to the following: Defendant suspected that she had been having an affair with her work supervisor, and had threatened to prove it so they would be fired from their jobs; Defendant had called the supervisor's wife to warn her of the alleged affair; after the separation, Defendant had "problems" with Darci dating other men and had physically confronted them on two separate occasions; Defendant had physically assaulted her during the marriage; despite Darci's seventy-five calls to the police, Defendant continued to harass her after the separation, and his attitude never changed.

Darci's work supervisor [Ron] testified that Defendant harassed him and his wife, alleging that he was having an affair with Darci. He also testified that he had received threatening phone calls from Defendant, and that Defendant had told him that there was a "bug" on Darci's telephone.

Although Defendant was initially represented by counsel following his indictment on second-degree burglary, he elected to proceed *pro se* at trial. Defendant testified that when the burglary occurred, he was with another woman, but he failed to produce her at trial to corroborate his alibi. He admitted that he left the two recorded messages for Darci on the night of the burglary, but denied breaking into her apartment.

After hearing all of the evidence, the jury found Defendant guilty of second-degree burglary, and the trial court sentenced Defendant to five years in prison.

### Case No. 19891

In Defendant's direct appeal from his conviction, he presents one point relied on for our consideration:

The trial court plainly erred in allowing the State to elicit and argue evidence that [Defendant] had "problems" with Darci seeing other men, that [Defendant] had threatened and harassed Darci and Ron, that [Defendant] had physically assaulted other men, that Darci's house in West Plains had been broken into and [Defendant] had property taken from that house, that [Defendant] had physically assaulted Darci, that Darci had called the police on [Defendant] seventy-five times and his attitude never changed, that [Defendant] harassed Ron's wife, and that [Defendant] "bugged" Darci's telephone, . . . in that the evidence was not legally relevant because its prejudicial effect outweighed its probative value and was inadmissible proof of bad character and propensity to commit the offense charged, resulting in manifest injustice.

■■■ As Defendant acknowledges in his point relied on, our review of this point is confined to plain error under Rule 30.20, because Defendant failed to object to the admission of the evidence of which he now complains, and failed to raise the matter in his motion for new trial. *See State v. Watts,* 813 S.W.2d 940, 943 (Mo.App. E.D.1991). Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Fleer,* 851 S.W.2d 582, 592 (Mo.App. E.D. 1993). The burden of demonstrating that the action of the trial court resulted in manifest injustice is allocated to the defendant. Id.

■■■ Defendant argues that "[t]he State went to great lengths to demonstrate [Defendant's] bad character in order to infer his guilt of the crime charged"; "[a] criminal defendant has the right to be tried only for the crime with which he is charged"; and that "[e]vidence of uncharged crimes or acts is not admissible to show that the defendant has a propensity to commit crimes such as the crime charged."

Evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing the propensity of the defendant to commit the charged crime. Such evidence is admissible, however, if it is both logically and legally relevant. To be logically relevant, the evidence of prior misconduct must have a legitimate tendency to establish directly the defendant's guilt of the charged crime. If the evidence tends to establish motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other, or identity, it is admissible. To be legally relevant, the probative value of the evidence must outweigh the prejudicial effect. Evidence of prior misconduct that does not constitute one of the five enumerated exceptions may be admissible if the evidence is logically and legally relevant. Balancing the value and effect of evidence rests within the sound discretion of the trial court. (citations omitted)

*State v. Jacobs,* 939 S.W.2d 7, 10 (Mo.App. W.D.1997); *see also State v. Bernard,* 849 S.W.2d 10, 13 (Mo.banc 1993).

■■■ The evidence of which Defendant now complains exhibits the continuing animus of Defendant toward his ex-wife, and arguably demonstrates his motive and intent to injure her or to damage or obtain items of her property. Courts have held that the admission of similar evidence was not an abuse of discretion, *see State v. Jacobs,* 939 S.W.2d at 10; *State v. Patterson,* 847 S.W.2d 935, 938 (Mo.App. E.D.1993); *State v. Williams,* 784 S.W.2d 309, 312 (Mo.App. E.D.1990), nor did it result in manifest injustice or miscarriage of justice. *See State v. Herrick,* 814 S.W.2d 660, 663–64 (Mo.App. S.D.1991). Therefore, we hold that the admission of the evidence delineated in Defendant's point relied on did not amount to plain error resulting in manifest injustice or miscarriage of justice.

■■■ Defendant also argues that the State's closing argument was improper. According to Defendant, "[e]vidence of [Defendant's] bad character and propensity to commit the offense was not only elicited from the

witnesses, but was argued by the State in closing argument." Defendant argues that the State was clearly referring to the evidence of physical abuse when it asked the jury, "What kind of man not only beats up the two ex-wives during cross-examination, but then wants to bring the one and put her back on the stand, and then bring Darci back in here and beat her up again?" Defendant also argues that the State was clearly directing the attention of the jury to the issue of Defendant's character when it asked, "Good Lord, what kind of man is this?"

 Again, because Defendant did not object to the statements at the time they were made or raise the issue in his motion for new trial, we review the challenged statements for plain error only. "Plain error relief as to closing arguments should be rarely granted and is generally denied without explication. This is because substantial latitude is allowed in closing argument and, in the absence of a specific request for relief, any trial court action would be uninvited interference which itself might constitute error." *State v. Lawson*, 876 S.W.2d 770, 774 (Mo.App. S.D.1994) (citations omitted); *see also State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc), cert. denied, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). "Even assuming the argument was improper, a conviction will be reversed for improper argument only if it is established that the comment of which [Defendant] complains had a decisive effect on the jury's determination." *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993).

Consistent with our holding that the admission of the evidence complained of did not rise to the level of plain error, we likewise hold that Defendant is not entitled to relief for plain error as a result of the State's closing argument. Defendant's point is denied.

The judgment is affirmed.

### Case No. 20921

In Case No. 20921, Defendant alleges that the motion court clearly erred in denying his Rule 29.15 motion to vacate, set aside, or correct the judgment and sentence. According-

ing to Defendant, he was denied effective assistance of counsel because, "prior to withdrawing from [Defendant's] case for lack of payment, retained counsel failed to subpoena the person who could establish [Defendant's] alibi, and [Defendant] was thereby prejudiced." Defendant specifically argued the following in his amended Rule 29.15 motion:

Counsel failed, before withdrawing, to subpoena a necessary witness to support [Defendant's] alibi. Becky Breedlove would have testified if called that she was with [Defendant] during the time of the alleged burglary and that he did not commit it. There is a reasonable probability of a different outcome if this evidence had been presented.

Following an evidentiary hearing, the motion court made the following finding:

Becky Breedlove did not testify at the evidentiary hearing. [Defendant] presented no evidence to show that Ms. Breedlove could have been located, would have testified on [Defendant's] behalf, and would have provided [Defendant] with a defense.

 "To establish that counsel was ineffective for failing to call witnesses at trial, defendant must show that counsel's failure to call the witnesses was something other than reasonable trial strategy, that the witnesses could have been located through reasonable investigation, that the witnesses would have testified if called, and that the witnesses' testimony would have provided defendant with a viable defense." *State v. Williamson*, 877 S.W.2d 258, 262 (Mo.App. W.D.1994). Defendant made no such showing.

 Our review of the motion court's findings and conclusions is limited to a determination of whether they are clearly erroneous. Rule 29.15(j). Such findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). Based on Defendant's failure to meet his burden at the evidentiary hearing, we find that the motion court's findings of fact and conclusions of law are not clearly erroneous.

We also note that Defendant proceeded to trial *pro se* in September 1994 after his counsel withdrew in July 1994 for lack of payment. Defendant admitted at the evidentiary hearing that he did not attempt to subpoena Breedlove until only days before trial, when it was too late, because of his own reluctance to subpoena her as a witness. He testified that he had not wanted to get her involved, had requested that she talk with the attorney who withdrew only at the attorney's request, and had intended to present his alibi defense without her testimony.

 Defendant had two months from the time his counsel withdrew to secure the presence of his alibi witness at trial. "While Defendant is not required to be represented by an attorney, he is not entitled to any more indulgence than he would have received had he been represented by an attorney." *Crowe v. Clairday*, 935 S.W.2d 343, 347 (Mo.App. S.D.1996). We do not comprehend how Defendant's pre-trial counsel can be deemed ineffective under the circumstances of this case.

The judgment is affirmed.