**STATE of Missouri,
Plaintiff/Respondent,**

v.

**John WRIGHT, Defendant/Appellant.**

**No. ED 76692.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 10, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 9, 2000.

Application for Transfer Denied
Dec. 5, 2000.

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

KATHIANNE KNAUP CRANE, Judge.

Defendant, John Wright, appeals from the judgment entered on a jury verdict finding him guilty of one count of forcible rape, in violation of Section 566.030 RSMo (Cum.Supp.1998); two counts of forcible sodomy, in violation of Section 566.060 RSMo (Cum.Supp.1998); one count of kidnapping, in violation of Section 565.110 RSMo (1994); one count of burglary in the first degree, in violation of Section 569.160 RSMo (1994); and one count of trespassing in the first degree, in violation of Section 569.140 RSMo (1994). The trial court sentenced him to fifteen years imprisonment on each of the forcible rape and sodomy counts, to be served concurrently; five years on the kidnapping and burglary counts, to be served concurrently with each other and consecutively to the fifteen-year terms; and thirty days confinement for trespass.

The sufficiency of the evidence is not in dispute. During the night of September 3, 1998, defendant entered the apartment of the sister (sister) of his former girlfriend (victim), where victim was sleeping. When victim awoke defendant held his hand over her mouth and threatened to harm her if she would not come back to him.

Victim thereafter obtained a restraining order, which was served on defendant on September 11, 1998 at about 3:30 p.m. At about 4:00 a.m. the next morning, defendant, who was wearing rubber gloves, broke into sister's apartment where victim was sleeping, and put his hand over her mouth. They struggled, and defendant wrapped duct tape around victim's mouth and bound victim's hands and feet with duct tape. He showed victim that he was wearing rubber gloves so that he would not leave fingerprints. He took her car keys, transported her in her car to his apartment, and threw her down on the bed. Defendant untaped victim's hands and feet, but he told her not to run or he would break her neck. He said that he would untape her mouth if she would not

scream, but he did not do so right away. Victim struggled as defendant began to try to arouse her, and defendant kept telling her he would break her neck. He said he learned how to do so in the special forces.

Defendant then removed the tape from victim's mouth and tried to put his penis into her mouth. Victim kept turning her head, but defendant succeeded in forcing the tip of his penis into her mouth. Defendant put baby oil on victim's anus and alternately put his penis into her anus and into her vagina until he ejaculated. Defendant said, "Now you have a case against me because my sperm's inside of you." Victim passed out. When she awoke it was daylight, and defendant was not in the room. She grabbed her keys, left the apartment, and returned to sister's apartment at approximately 8:30 a.m. where she collapsed. Sister and her son called 911 at 8:52 a.m.

Police officers responded to sister's home and interviewed victim about the abduction, rape, and sodomy, including the use of duct tape. Other officers also arrived and, after obtaining this information at approximately 10:00 a.m., went to defendant's apartment to arrest him.[1] They knocked on the door. While they waited for an answer, they heard a commotion, which led them to believe defendant was still inside. The landlady then appeared and let the officers into defendant's apartment with her key. They entered because they believed defendant was possibly destroying evidence and feared he would escape if they left the apartment building. They did not find defendant, but they saw used duct tape in the kitchen trash can, a roll of duct tape in a milk crate in the middle of the bedroom floor, a copy of the restraining order in the bedroom, and rubber gloves on an end table. All these objects were in plain view. The officers photographed the roll of duct tape, the used duct tape, the rubber gloves, and the copy of the restraining order. Defendant was thereafter indicted for the rape, sodomy, and kidnapping of victim and the September 3, 1998 trespass of and September 12, 1998 burglary of sister's apartment.

On appeal defendant contends that the trial court 1) erred in overruling his motion to suppress the photographs; 2) plainly erred in not instructing on mental state on the forcible sodomy counts; 3) erred in admitting evidence of defendant's prior bad acts and harassment against the victims; 4) erred in refusing to sever the trespass count from the remaining counts; and 5) plainly erred in failing *sua sponte* to excuse certain jurors for cause.

## I. *Motion to Suppress*

For his first point, defendant contends that the trial court erred in denying his motion to suppress the photographs taken during the police officers' warrantless entry into his apartment. He argues that the police officers did not reasonably believe the landlady had authority to consent to the search[2] and no exigent circumstances justified the warrantless entry.

We will not reverse a trial court's decision on a motion to suppress unless it is clearly erroneous. *State v. Blackman*, 875 S.W.2d 122, 135 (Mo.App.1994). We review the trial court's factual findings only to determine if they are supported by substantial evidence. *Id.* In making this determination, we view the facts and any reasonable inferences arising therefrom in the light most favorable to the trial court's ruling and disregard all contrary evidence and inferences. *Id.*

When we consider whether a warrantless search and seizure is reasonable under the fourth amendment, we be-

---

1. In the meantime victim went to the hospital.

2. The issue of the officers' belief about the landlady's authority is not preserved because it was not raised in the motion to suppress or included in the motion for new trial. Rule 29.11(d); *State v. Rousan*, 961 S.W.2d 831, 842 (Mo. banc 1998). Accordingly, we decline to address that issue. *Id.*

gin our analysis by inquiring if the police are lawfully in the place from which they seized the evidence. *State v. Johnston*, 957 S.W.2d 734, 742 (Mo. banc 1997). Police may enter private homes without a warrant when exigent circumstances compel them to do so. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). Exigent circumstances exist if the time required to obtain a warrant "would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence." *State v. Hicks*, 853 S.W.2d 955, 956 (Mo.App.1993) (quoting *State v. Peters*, 695 S.W.2d 140, 147 (Mo.App.1985)). "[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984).

■ In this case, the crimes were extremely grave. *Hicks*, 853 S.W.2d at 957. The police had more than minimal probable cause to believe the defendant committed the crimes because he was known to the victim, who was hysterical and bore the marks from the duct tape. The officers had reason to believe defendant was in the apartment because he lived there, the crime had occurred there just hours before, the victim had escaped from the apartment just over an hour before, and police thought they heard a commotion in it. If they left the apartment to get a warrant, rather than enter it, there was a likelihood defendant would destroy the evidence of the crimes or escape.

■ If the officers are lawfully on the premises, they can seize an item in plain view if they have probable cause to believe that the object is connected to the crime. *Johnston*, 957 S.W.2d at 742. The items seized and photographed were in plain view and were connected to the reported crimes.

Substantial evidence supported the trial court's denial of the motion to suppress. Point one is denied.

II. *Verdict–Directing Instructions—Sodomy*

In his second point defendant asserts that the trial court plainly erred in submitting jury instructions 6 and 7, the verdict directing instructions on forcible sodomy, because they omitted element four, that defendant acted "knowingly."

During the instruction conference the state offered the following Instruction 6 on Count II:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 12, 1998, in the City of St. Louis, State of Missouri, the defendant placed his penis in the anus of Virginia Williams, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that defendant did so by the use of forcible compulsion,

then you will find the defendant guilty under Count II of forcible sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

"Forcible compulsion" means physical force that overcomes reasonable resistance or a threat, express or implied, that places a person in reasonable fear of death or serious physical injury.

If you do find the defendant guilty under Count II of forcible sodomy, you will assess and declare one of the following punishments:

1. Life imprisonment.
2. Imprisonment for a term of years fixed by you, but not less than five years.

It also offered Instruction No. 7 on Count III, which was identical except that it read "mouth" in place of "anus" and "Count III" in place of "Count II."

Instructions 6 and 7 were based on MAI–CR3d 320.09 (10–1–95) which was effective until October 1, 1998 when MAI–CR3d 320.09 (10–1–98) became effective. MAI CR3d 320.09 (10–1–98), which was applicable to offenses committed after January 1, 1995, should have been given in this case. It was in effect when defendant was tried in May, 1999 and properly charged the elements of the case in accord with Sections 566.060.1 RSMo (Cum.Supp. 1998) and 562.021.3 RSMo (Cum.Supp. 1997) and *State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997), all of which governed on the date the offenses were committed.

■ The state agrees that instructions 6 and 7 did not conform to MAI–CR3d 320.09 (10–1–98) but argues that defendant waived any error, including plain error, by affirmatively advising the court that he had no objection. The state further argues that no plain error arose because defendant's mental state was not in dispute.

When the court asked defense counsel if she had any objections or additions to the instructions, she responded, "No, sir." Further, defendant did not raise this issue in his motion for new trial. Rule 28.03 provides in part:

Counsel shall make specific objections to instructions or verdict forms considered erroneous. No party may assign as er-

ror the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.... The objections must also be raised in the motion for new trial in accordance with Rule 29.11.

Rule 28.03 requires a defendant to both object and raise the issue in the motion for new trial in order to assign the giving of the instruction as error. Here defendant did neither and thus did not preserve the giving of these instructions as error. *State v. Cates*, 3 S.W.3d 369, 371 (Mo.App.1999); *State v. Hill*, 970 S.W.2d 868, 872 (Mo.App. 1998). As a result we may only review, if at all, for plain error.

A. *Waiver*

■ The state first argues that defendant has waived even plain error review because defense counsel did not just fail to object; defense counsel specifically advised the court that she had no objection.[3] There is authority to support a conclusion that a defendant waives plain error review by affirmatively indicating to the court that he or she has no objection to a proposed action. *State v. Zelinger*, 873 S.W.2d 656, 660 (Mo.App.1994); *State v. Stillman*, 938 S.W.2d 287, 290 (Mo.App. 1997). A statement that counsel has no objection, as opposed to a failure to object, waives plain error review because the response precludes a finding that the failure to object was negligent or inadvertent. *State v. Scott*, 858 S.W.2d 282, 285 (Mo. App.1993). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998). Here, the proper instruction with the requisite mental state had been published in MAI on October 1, 1998, five months before trial. MAI–CR3d 320.09 (10–1–98). In addition, *Carson*, 941

---

**3.** Accordingly, this case does not involve the issue decided by *State v. Martindale*, 945 S.W.2d 669, 673–74 (Mo.App. E.D.1997), in which this district decided that even a failure

to object waives plain error review, which holding has been rejected by the Western District in *State v. Bradshaw*, 26 S.W.3d 461 (Mo.App. W.D. 2000).

S.W.2d at 520, and Section 562.021 RSMo (Cum.Supp.1997) required the instruction to include a mental state prior to that time. Thus, the requirement that the instruction contain a mental state was a known right. Under the above authorities, defendant would be considered to have waived plain error review. However, because the concept of waiver of plain error review has recently been questioned, we have elected to review for plain error.[4]

### B. *Absence of Plain Error*

The state alternatively argues that the failure to instruct on the mental state did not constitute plain error. Instructional error seldom rises to the level of plain error. *State v. Busch*, 920 S.W.2d 565, 570 (Mo.App.1996). A defendant must go beyond a demonstration of mere prejudice, *Cates*, 3 S.W.3d at 372, and establish that the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict. *State v. Nolan*, 872 S.W.2d 99, 103 (Mo. banc 1994). It is well-settled that plain error does not result from a failure to instruct the jury on an uncontroverted element of the crime. *Busch*, 920 S.W.2d at 570; *Cates*, 3 S.W.3d at 372; *Hill*, 970 S.W.2d at 872; *State v. Newton*, 963 S.W.2d 295, 298 (Mo.App.1997); *State v. Walton*, 703 S.W.2d 540, 542 (Mo.App. 1986).

In this case the culpable mental state was not controverted. Because Section 566.060 RSMo (Cum.Supp.1998) does not prescribe a culpable mental state, Section 562.021.3 RSMo (Cum.Supp.1998) applies, and it provides that a culpable mental state is established if the defendant acts purposely or knowingly, but acting recklessly or with criminal negligence is insufficient. *Id. See also* MAI–CR3d 320.09 Notes on Use 4.

To commit this offense "knowingly," defendant must have known that he was placing his penis in victim's mouth and anus by forcible compulsion. In this case, defendant did not controvert that the acts of forcible sodomy were committed knowingly. He did not claim that the acts constituting forcible sodomy were committed recklessly, negligently, or accidentally. Rather, he claimed that the acts never occurred. He testified that victim voluntarily came to his apartment, woke him up, and engaged in consensual intercourse. He denied that any other types of sexual acts occurred. He specifically testified that he did not kidnap, rape, or sodomize victim. Thus the issue before the jury was whether the events testified to by victim happened at all. If the jury found those events occurred, there was substantial evidence, as set out in detail above, from which the jury could infer that defendant acted knowingly and not recklessly or negligently in committing the acts of forcible sodomy. Under these circumstances the failure to instruct on mental state on the sodomy counts was not plain error. *See Busch*, 920 S.W.2d at 570; *Cates*, 3 S.W.3d at 372; *Hill*, 970 S.W.2d at 872; *Newton*, 963 S.W.2d at 298; *Walton*, 703 S.W.2d at 542. Point two is denied.

### III. *Evidence of Prior Uncharged Physical Abuse and Harassment*

In his third point defendant claims that the trial court abused its discretion in admitting evidence of prior bad acts against victim and sister, specifically prior beatings of victim and harassing phone calls to sister to reach victim. He argues that this constituted inadmissible propensity evidence of uncharged crimes and bad acts.

Evidence of uncharged crimes, wrongs, or acts is inadmissible for the purpose of showing a defendant's propensity to commit the charged crimes. *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999).

---

4.  *See Bradshaw,* at 471; *State v. Wurtzberger,* 26 S.W.3d 471 (Mo.App. W.D.2000), cause ordered transferred to Mo. Supreme Court (Aug. 29, 2000).

Such evidence is admissible, however, if it is both logically and legally relevant. *Id.* To be logically relevant, the evidence of prior misconduct must have a legitimate tendency to establish directly the defendant's guilt of the charged crime. *Id.* If the evidence tends to establish motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other, or identity, it is admissible. *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993). To be legally relevant, the probative value of the evidence must outweigh the prejudicial effect. *Barton*, 998 S.W.2d at 28; *Bernard*, 849 S.W.2d at 13. Evidence of prior misconduct that does not constitute one of the five exceptions enumerated above may be admissible if the evidence is logically and legally relevant. *Bernard*, 849 S.W.2d at 13. The trial court has the discretion to balance the value and effect of evidence. *Id.*

▮ The evidence of abuse and harassment during and after the time that defendant lived with victim was logically and legally relevant because it legitimately tended to establish defendant's guilt of the charged offenses for the reason that the evidence demonstrated defendant's hostility towards victim and his motive to injure her. *State v. Smotherman*, 993 S.W.2d 525, 528–529 (Mo.App.1999). *See also State v. McCracken*, 948 S.W.2d 710, 713 (Mo.App.1997); *State v. Andrich*, 943 S.W.2d 841, 844 (Mo.App.1997); *State v. Jacobs*, 939 S.W.2d 7, 10 (Mo.App.1997); *State v. Williams*, 865 S.W.2d 794, 802–804 (Mo.App.1993); *State v. Herrick*, 814 S.W.2d 660, 664 (Mo.App.1991); *State v. Dooley*, 851 S.W.2d 683, 688 (Mo.App. 1993).

▮ The probative value of this evidence outweighed its prejudicial effect. The trial court did not abuse its discretion in admitting victim's and sister's testimony. Point three is denied.

## IV. Severance of Trespass Count

For his fourth point defendant asserts that the trial court clearly erred and abused its discretion in refusing to sever Count VI, which charged trespass in the first degree, from the other counts because the September 3, 1998 trespass on sister's property occurred nine days prior to his alleged entry on sister's property to commit the other crimes charged. He argues that jurors unfairly used the evidence of that trespass to find defendant guilty of unlawfully entering sister's property, nine days later, to kidnap, rape, and sodomize victim.

▮ Defendant did not make a written request for severance as required by Rule 24.07. Accordingly, there is no error, plain or otherwise, for us to review. We explained in *State v. Butler*, 904 S.W.2d 68 (Mo.App.1995):

> When a defendant is charged with more than one offense in a single indictment or information, an offense shall be tried separately only if three conditions are met, one of which is the filing of a written motion requesting a separate trial of the offense. Rule 24.07. If no request for severance is made, the trial court must try all offenses properly charged in a single indictment or information to one jury in a single trial. Section 545.885 RSMo 1994; *State v. Shubert*, 747 S.W.2d 165, 169–70 (Mo. App.1988). Here the trial court did not err because the statute prohibited the court from severing the offenses in the absence of a motion to sever. Plain error must be based on some error; not just on prejudice. *Shubert*, 747 S.W.2d at 169. In the absence of error, there could be no plain error.

Point four is denied.

## V. Striking Jurors for Cause

For his fifth point defendant asserts that the trial court plainly erred in failing to *sua sponte* excuse three jurors, Mr. Wormley, Ms. Clark, and Ms. James, for

cause. Defendant failed to challenge these jurors for cause, even though he was invited to raise such challenges by the court. He concedes that this point was not properly preserved.

The failure to make a timely and proper objection to members of a jury panel constitutes a waiver. *State v. Sumowski,* 794 S.W.2d 643, 647 (Mo. banc 1990); *State v. Wilson,* 888 S.W.2d 744, 750 (Mo.App.1994). "The rule requiring contemporaneous objections to the qualifications of jurors is well founded. It serves to minimize the incentive to sandbag in the hope of acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process." *State v. Hadley,* 815 S.W.2d 422, 423 (Mo. banc 1991) (citing *Sumowski,* 794 S.W.2d at 647). "For that reason, juror challenges made for the first time after a conviction are highly suspect." *Hadley,* 815 S.W.2d at 423. Furthermore, it is well settled that the trial court has no duty to strike a venireperson on its own motion. *Id.; State v. Anderson,* 951 S.W.2d 710, 711 (Mo.App.1997); *State v. Eastburn,* 950 S.W.2d 595, 599 (Mo.App. 1997).

We have, nevertheless, reviewed for plain error, as the Supreme Court did in *Hadley,* and find none. Defendant first argues that venireperson Wormley "expressed doubts about treating the testimony of police officers the same as other witnesses." Wormley did answer that part of him gives police officers more credence than other witnesses. However, Wormley earlier had stated that he was dissatisfied with the work police officers did in a case in which two of his friends were convicted of drug offenses. Thus, Wormley did not show a clear-cut bias in favor of police officers. In any event, the credibility of the police officers was not a jury issue in this case.

Defendant next claims that venirepersons James and Clark clearly stated they believed police officers were incapable of lying. He relies on the following portion of the record to substantiate his claim:

[Defense Counsel]: Okay. Do you think police officers are capable of lying?

VENIREPERSON DIGGS: Yes.

[Defense Counsel]: Thank you. Ms. Free–Wiese?

VENIREPERSON FREE–WIESE: No.

[Defense Counsel]: Ms. James?

VENIREPERSON JAMES: No.

[Defense Counsel]: Ms. Clark?

VENIREPERSON CLARK: No.

However, when this exchange is read in context, it is clear that defense counsel was actually eliciting answers to a question whether any juror had prior jury service. When counsel received an affirmative response to the question whether any venireperson had ever served on a jury, she followed up with further questions for that venireperson. Then she went on to the next venireperson to find out whether he or she had ever served on a jury. This pattern was so established that defense counsel did not have to keep repeating the original question. Just prior to the point where the transcript excerpt begins, venireperson Diggs had responded that he had served as an alternate in a federal case involving police officer defendants. Defense counsel questioned him about the effect of his experience in that case, which ended with the question about police officers lying. Defense counsel had finished her follow-up questioning of venireperson Diggs when she called on the remaining venirepersons, who responded to counsel's original question about whether they had ever served on a jury. Venirepersons Clark and James both answered "no" to the original question to all panel members whether they had ever served on a jury, not to the specific follow-up question to venireperson Diggs whether he believed police officers were capable of lying.

The trial court did not err, plainly or otherwise, in failing to *sua sponte* remove

these three venirepersons for cause. Point five is denied.

MARY K. HOFF, C.J., and ROBERT E. CRIST, Sr.J., concur.